PEOPLE *ex rel.* TERRY *v.* BARTLETT.

FIGHTING a duel with fatal result is not murder within our statutes, but a special offense under the Act of 1855.
Over such offense Courts of Sessions have jurisdiction.

APPEAL from the Fourth District.

For facts see opinion.   The Court below denied the writ. Relator appeals.

*J. P. Hoge* and *A. P. Crittenden,* for Appellant.

*A. Campbell,* for Respondent.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

On the oral argument, we inclined to think the point made by the Appellant well taken ; but, on further examination, we think differently.

This was a proceeding by *mandamus* against the Clerk of the Court of Sessions of San Francisco County, to compel him to send to the District Court of the Fourth District an indictment

against David S. Terry for a violation of the statute of 1855, against dueling. (Stat. of 1855, p. 152.)

The indictment charges the fighting of a duel by agreement of defendant with David C. Broderick, and the death of Broderick as the result of the meeting. The only question is, has the Court of Sessions jurisdiction of this offense thus characterized? And this question depends upon the construction to be given of various statutes.

*By statute organizing the Courts of Sessions, (Wood's Dig.* 132,) it is provided that this Court "has jurisdiction to try and determine all indictments found therein, for all public offenses, except murder, manslaughter, and arson." The question, then, arises, is the offense with which the defendant is charged by this indictment the offense of murder within the meaning of this provision of the statute? The point is not whether fighting a duel with a fatal result to the other party is, morally, murder, or whether it comprehends the offense of murder, but whether it be murder as this crime is defined by statute, and within the intent of the law so embraced. We think the Legislature did not mean to place this offense in the same category with other unlawful homicides. If no special regulation had been made, it would have fallen within the general statute against murder. But the Legislature saw that the offense could not be punished in this way at all. Public sentiment revolted at the idea that a man who goes upon the field, however unjustifiably, in strict morals, or in respect to the law of the land, and meets an antagonist fairly in deadly combat, stands on an equal footing with the assassin who kills his victim at advantage, from revenge or for lucre. Accordingly, a different measure of punishment was prescribed, and a separate offense from that of murder was created of the facts. As early as 1850, the Legislature passed an Act (Stat. of 1850, p. 253, Sec. 407) as follows: "If any person shall, by previous appointment or agreement, fight a duel, and in so doing shall kill his antagonist, or any person or persons, or shall inflict such wound as that the party injured shall die thereof, within one year thereafter, every such offender, his second, as well as the second of the person killed, and all aiders, abettors, and counselors, being thereof duly convicted, shall be

punished by imprisonment in the State Prison for any term not exceeding five years, nor less than one year."

This Act was amended in 1855, (Stat. 1855, p. 152,) so as to make the provision more stringent in respect to the principal, but not including seconds; but the purport of the language defining the offense is substantially the same as the provision quoted. There are several other provisions of this Act of 1855, which place pecuniary burdens and responsibilities upon the duelist; when life is not taken, (as in Section 3,) but when the antagonist is maimed, there is provision; these provisions are penal in their character, and to be construed as penalties. The offense in the statute is not for killing; the offense is the fighting of the duel, with certain results. It is this which gives character and definition to the crime. It is true that the offense is not complete, so as to be within the first section, unless the result be fatal; but this consequence is but an ingredient of the offense, not the offense itself. The *whole* crime is fighting a duel with a fatal result; and this entire thing is, by special Act, made an offense. This offense was not designed to fall within the definitions of murder, given in the statutes, but has its own separate definition, given in the Act as a separate and distinct offense.

A review of the various provisions of law which touch the crime of murder, manslaughter, etc.—the mode of trial—finding of the jury as to degrees, punishment, etc. confirms this view, and shows that the Legislature did not, in legislating upon this offense, mean to bring it within the category of murder, as therein provided for. But we think it unnecessary to consume time in making this review, for we think the statement we have given conclusive of the question.

By the 53d Section of the Act organizing the Courts of Sessions, it is provided, that when an indictment is found in the Court of Sessions for murder, manslaughter, or arson, it shall be transmitted to the District Court, etc. But of other offenses the Court of Sessions itself has jurisdiction.

We are not asked to decide whether the Court of Sessions of San Francisco had jurisdiction over this offense; that question has not been argued; nor could we take cognizance of it in this proceeding.

We affirm the judgment.